**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————— )
RHEA LANA, INC.                                           )
**1055 Sunflower Drive**                                  )
**Suite 104**                                             )
**Conway, AR 72034**                                      )
                                                          )
**and**                                                   )
                                                          )
**RHEA LANA'S FRANCHISE SYSTEMS, INC.**  )
**1055 Sunflower Drive**                                  )      Case No. _____
**Suite 104**                                             )
**Conway, AR 72034**                                      )
                                                          )
                    *Plaintiffs*,                         )
                                                          )
        **v.**                                            )
                                                          )
**U.S. DEPARTMENT OF LABOR**                              )
**200 Constitution Avenue, NW**                           )
**Washington, D.C. 20210**                                )
                                                          )
                    *Defendant*.                          )
———————————————————————— )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

This is a civil action challenging the decision of the U.S. Department of Labor ("DOL" or "Defendant") to classify "consignors/volunteers" as employees under the Fair Labor Standards Act ("FLSA").

### Parties

1.      Plaintiff Rhea Lana, Inc. ("Rhea Lana's") is an Arkansas corporation with its principal place of business in Conway, Arkansas.

2.      Plaintiff Rhea Lana's Franchise Systems, Inc. ("Rhea Lana's Franchise Systems") is an Arkansas corporation with its principal place of business in Conway, Arkansas.  ("Rhea Lana's" and "Rhea Lana's Franchise Systems" may be jointly referred to as "Plaintiffs".)

3.      Defendant DOL is an Executive Branch department of the United States, an "agency" within the meaning of 5 U.S.C. § 701(b), and is charged with administering the FLSA. DOL's principal office is located in Washington, D.C.

## Jurisdiction, Venue, and Relief

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 5 U.S.C. §§ 701-706, and 29 U.S.C. § 201 *et seq*.  DOL's decision to classify consignors/volunteers as employees under the FLSA constitutes final agency action that is reviewable under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704.

5.      Venue properly lies with this Court under 28 U.S.C. § 1391(e) because DOL is an agency of the United States government with its principal office in this district.

6.      Venue also properly lies with this Court because this case involves a uniform, national DOL policy of classifying volunteers at for-profit enterprises as FLSA employees.[1]

7.      There is a dispute between the parties in this case with respect to Plaintiffs' FLSA compliance.

8.      This dispute is a justiciable "case or controversy" for which this Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, 5 U.S.C. § 702, and Fed. R. Civ. P. 57.

9.      Such relief will redress the harm done by DOL to Plaintiffs.

10.      This Court may grant Plaintiffs injunctive relief pursuant to 28 U.S.C. § 2202, 5 U.S.C. §§ 705-06, and Fed. R. Civ. P. 65.

11.      This Court may award Plaintiffs reasonable costs and attorneys' fees incurred in connection with this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

---

[1]      Appended as Exhibit 1 is a true and correct copy of a DOL webpage that reflects DOL's uniform policy toward volunteers under the FLSA.  *See also* http://www.dol.gov/elaws/esa/flsa/docs/volunteers.asp.

## **Facts**

### Plaintiffs' Business

12.     Rhea Lana's is a family-owned business in Arkansas that organizes and hosts three semi-annual, short-term consignment sales for children's clothes, toys, and related items.

13.     Since 2004, Rhea Lana's has offered high-quality, name-brand, and boutique children's items for a low price.  Through consignment, individuals may sell used children's items at Rhea Lana's events.  While Rhea Lana's events are open to the public, young stay-at-home mothers, working mothers, and retired grandmothers make up the bulk of Rhea Lana's shoppers, consignors, and volunteers.

14.     In preparation for each event, Rhea Lana's leases space for the upcoming sale. The company's employees are accountable for logistical and administrative event details.

15.     Consignors provide all of the items for sale at Rhea Lana's events, which last approximately one week.

16.     Individuals wishing to sell clothes on consignment can register and price their items online in advance of the consignment sale.  Consignors receive an individual consignor code and report that enables them to track their individual sales progress in real-time online.

17.     Consignors are responsible for their items and must prepare them for sale, tag their items, bring their items to the event location, check-in and attach price labels to their items, and place their items on display racks.  If a consignor's items are not sold at the event, the consignor may either retrieve the items or donate them to a charity.

18.     Consistent with the consignment event industry, consignors may volunteer at Rhea Lana's events, but they are not required to do so.

19.     Those consignors who choose to volunteer (consignors/volunteers) undertake general tasks such as greeting shoppers, picking up fallen price tags, reorganizing items that shoppers have handled, and assisting shoppers as they carry items to their vehicles.

20.     Consignors/volunteers can volunteer for as many or as few hours as they desire and can choose their own schedules and control what activities (greeting, sorting, disassembling, etc.) they will perform.

21.     If a consignor/volunteer is unable to attend, Rhea Lana's does not withhold any portion of that consignor's/volunteer's consignment proceeds.

22.     Rhea Lana's allows consignors/volunteers to shop before the event opens to the general public.

23.     Rhea Lana's does not interview potential consignors/volunteers.

24.     Rhea Lana's does not compensate consignors/volunteers.

25.     Consignors/volunteers have a vested interest in the success of Rhea Lana's events because the vast majority of them receive at least seventy percent (70%) of all proceeds from their sold items.  They are therefore incentivized to volunteer to help ensure shoppers purchase their items.  For instance, consignors/volunteers can favorably display their consigned items at events.

26.     Consignors/volunteers also have a personal, non-monetary interest in volunteering, given that they have unique access to select products before other shoppers arrive.

27.     Rhea Lana's Franchise Systems offers franchise opportunities to enterprises that operate in substantial conformity with Rhea Lana's business model.  For example, each franchise is expected to operate semi-annual consignment events and consignors are allowed to volunteer during events.

<u>DOL's Investigation and Determination</u>

28.     In January 2013, DOL, through its Wage and Hour Division ("WHD"), initiated

an investigation of Plaintiffs' employment practices for the time period January 28, 2011 to

January 27, 2013.  Plaintiffs fully cooperated.

29.     On May 20, 2013, WHD met with Plaintiffs to discuss the results of its

investigation.  WHD determined consignors/volunteers to be employees under the FLSA, and

thus entitled to back wages in accordance with FLSA minimum wage and overtime provisions.

30.     WHD expected Plaintiffs' immediate compliance with WHD's decision.

31.     On or about August 6, 2013, Arkansas WHD District Director Robert Darling

("Darling") sent letters to Plaintiffs' current and/or former employees and consignors/volunteers,

informing them that they "might not have been paid as required by the law for the period of

01/28/2011 to 01/27/20136 [sic]." [2]  The letters informed recipients of their "private right under

the FLSA to bring an independent suit to recover any back wages due."[3]

32.     On August 26, 2013, Darling sent Plaintiffs a letter summarizing DOL's decision:

"The investigation disclosed violations of FLSA section 6 resulting from the failure to pay

employees at least the applicable minimum wage for all hours worked and/or FLSA section 7

from the failure to pay statutory overtime pay for hours worked in excess of 40 hours per

week."[4]

33.     Darling's letter characterized consignors/volunteers as employees: "It is my

understanding that you refuse to comply with the employee group known as

---

[2]     Appended as Exhibit 2 is a true and correct copy of an August 6, 2013 letter from DOL WHD to
        Plaintiffs' current and/or former employees and consignors/volunteers ("Ex. 2").

[3]     *See* Ex. 2.

[4]     Appended as Exhibit 3 is a true and correct copy of the August 26, 2013 letter from Robert
        Darling to Plaintiffs ("Ex. 3").

consignors/volunteers.  Letters have been sent to the consignors/volunteers informing them of

their private right under the FLSA to bring an independent suit to recover any back wages due."[5]

34.     Darling's letter threatened civil money penalties if Plaintiffs refused to comply:

> We would like to direct your attention to section 16(e) of the FLSA and
> Regulations, Part 578.  *As you will note, section 16(e) provides for the assessment*
> *of a civil money penalty for any repeated or willful violations of section 6 or 7, in*
> *an amount not to exceed $1,100 for each such violation*.  No penalty is being
> assessed as a result of this investigation.  If at any time in the future your firm is
> found to have violated the monetary provisions of the FLSA, it will be subject to
> such penalties.[6]  (Emphasis added.)

35.     WHD Principal Deputy Administrator Laura Fortman ("Fortman") explained

DOL's rationale for classifying consignors/volunteers as employees in an August 30, 2013 letter

to Congressman Tim Griffin of Arkansas.[7]  Fortman wrote:

> The WHD has a long standing policy of limiting volunteer status to those
> individuals performing charitable activities by for-profit organizations. The WHD
> determined that consignor's at Rhea Lana's events who brought in items to be
> sold, dropped them off, and then left the premises were not employees.  However,
> other workers who considered themselves to be 'volunteers' and any consignors
> who also worked at the event (operating the cash register, providing security, and
> assisting in the sorting and sales of goods) were found to be employees. The
> WHD determined that the 'volunteers' and 'consignor volunteers' engaged in
> activities that are an integral part of the Rhea Lana's FLSA-covered, for-profit
> business.[8]

36.     Although Fortman wrote that DOL has a long-standing policy of limiting

volunteer status to those individuals performing charitable activities by "for-profit"

organizations, Plaintiffs believe this was a typographical error and that Fortman actually meant

"non-profit" organizations.[9]

---

[5]     *See* Ex. 3.

[6]     *See* Ex. 3.

[7]     Appended as Exhibit 4 is a true and correct copy of the August 30, 2013 letter with enclosures
from Fortman to Congressman Tim Griffin ("Ex. 4").

[8]     Ex. 4.

[9]     Appended as Exhibit 5 is a true and correct copy of five WHD opinion letters.

## Claim for Relief

### Arbitrary, Capricious, and Illegal DOL Action

37.     Plaintiffs repeat and incorporate by reference herein the allegations contained in paragraphs one (1) through thirty-six (36).

38.     DOL's actions described herein, including its wrongful determination that consignors/volunteers are employees under the FLSA, were arbitrary, capricious, and otherwise not in accordance with the law, and harmed Plaintiffs.  5 U.S.C. § 706(2)(A).

39.     DOL applied the incorrect legal standard when it determined that consignors/volunteers were FLSA employees.

40.     DOL wrongfully ignored the economic realities of this case and instead arbitrarily and capriciously applied a categorical ban against volunteerism on behalf of for-profit enterprises.

41.     The economic realities in this case do not create an employer-employee relationship.  Unlike the volunteers in *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985), the consignors/volunteers here are not in a position of dependence, nor do they receive wages in any form.

42.     Judicial review is appropriate because legal consequences flow from DOL's decision.

43.     DOL's determination in the Darling letter fixes the legal relationship between Plaintiffs and the consignors/volunteers and exposes Plaintiffs to civil money penalties under 29 U.S.C. § 216(e) and 29 C.F.R. § 578.3(a).

44.     DOL's determination in the Darling letter similarly exposes Plaintiffs to substantial back wages and liquidated damages under 29 U.S.C. § 216(b).

45.     Unless Plaintiffs make immediate, significant changes to their businesses, they will continue to accrue thousands of dollars in potential liability.  *See Sackett v. Envtl. Prot. Agency*, 132 S. Ct. 1367, 1372 (2012).  Because DOL expects immediate compliance, Plaintiffs must either incur the substantial costs of complying with DOL's determination or violate DOL's directive and risk adverse consequences, such as an enforcement proceeding for back wages, liquidated damages, and/or civil penalties.  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 152-53 (1967).

46.     Furthermore, DOL's actions have caused and continue to cause Plaintiffs significant hardship, particularly to their business reputation and goodwill.

47.     With respect to Rhea Lana's, a local news station that had historically provided gratuitous news coverage and advertising revoked its services due to DOL's investigation.

48.     With respect to Rhea Lana's Franchise Systems, certain prospective franchisees have either declined to purchase franchises or have indicated that their purchase is contingent upon a successful resolution of DOL's consignor/volunteer classification.  Additionally, DOL's investigation forced Rhea Lana's Franchise Systems to re-direct revenue to pay Plaintiffs' legal defense.

49.     Fortman's letter, among other things, demonstrates that DOL's determination in the Darling letter marks the consummation of its decision-making process.

50.     Fortman's letter, among other things, demonstrates that DOL's determination in the Darling letter is not subject to further consideration or possible modification or any other agency review.

51.     Plaintiffs have exhausted all administrative remedies.

52.     The harm done by DOL to Plaintiffs will be redressed by a favorable ruling in this case.

53.     Such favorable ruling would preserve Plaintiffs' businesses, restore Plaintiffs' business reputation, and preserve Plaintiffs' commercial good will.

## Relief Requested

WHEREFORE Plaintiffs request the following relief:

A.     A declaration that consignors/volunteers participating under Plaintiffs' business model are not FLSA employees.

B.     A temporary and preliminary injunction prohibiting DOL from initiating any investigations, audits, enforcements, or other agency proceedings against Plaintiffs based on the use of consignors/volunteers during the pendency of this litigation.

C.     A permanent injunction prohibiting DOL from initiating any investigations, audits, enforcements, or other agency proceedings against Plaintiffs based on DOL's policy prohibiting volunteerism at for-profit organizations, or any similar policy that ignores the "economic realities" test.

D.     If this Court determines that consignors/volunteers participating under Plaintiffs' business model are subject to the FLSA, a permanent injunction prohibiting DOL from recovering civil money penalties or liquidated damages.

E.     Such attorneys' fees and costs as Plaintiffs may be entitled to under the law, including the Equal Access to Justice Act, 28 U.S.C. § 2412.

F.     Such other relief as this Court deems just and proper.

Dated:  January 6, 2014                    Respectfully submitted,

                                           /s/ Daniel Z. Epstein
                                           Daniel Z. Epstein
                                           D.C. Bar No. 1009132
                                           Cause of Action, Inc.
                                           1919 Pennsylvania Avenue, NW, Suite 650
                                           Washington, D.C. 20006
                                           Telephone: (202) 499-4232
                                           daniel.epstein@causeofaction.org

                                           /s/ Lorinda B. Harris
                                           Lorinda B. Harris
                                           D.C. Bar No. 993396
                                           Cause of Action, Inc.
                                           1919 Pennsylvania Avenue, NW, Suite 650
                                           Washington, D.C. 20006
                                           Telephone: (202) 499-4232
                                           lorinda.harris@causeofaction.org

                                           /s/ Reed D. Rubinstein
                                           Reed D. Rubinstein
                                           D.C. Bar No. 440153
                                           Dinsmore & Shohl LLP
                                           801 Pennsylvania Ave., NW, Suite 610
                                           Washington, D.C. 20004
                                           (202) 372-9120 (telephone)
                                           (202) 372-9141 (fax)
                                           reed.rubinstein@dinsmore.com