## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**RHEA LANA, INC.** and **RHEA LANA'S FRANCHISE SYSTEMS**,

Plaintiffs,

v.

**U.S. DEPARTMENT OF LABOR,**

Defendant.

Case No. 1:14-cv-00017 (CRC)

## MEMORANDUM OPINION

The U.S. Department of Labor ("DOL") investigated a small Arkansas company that organizes consignment sales; concluded that it had violated the Fair Labor Standards Act ("FLSA") by relying on volunteer workers; and notified the company in a letter that it could face steep fines for future infractions. The company, Rhea Lana, Inc., brought this lawsuit to challenge DOL's adverse determination under the Administrative Procedure Act ("APA"). The Department moves to dismiss the suit, arguing that its determination letter does not constitute reviewable "final agency action" under the APA. Until recently, the Department's argument would have easily prevailed under a long line of D.C. Circuit cases holding that agency notifications are not judicially reviewable if their legal effects are contingent on the initiation of a future enforcement action. In Sackett v. Environmental Protection Agency, 132 S. Ct. 1367 (2012), however, the Supreme Court unanimously held to be final agency action an Environmental Protection Agency ("EPA") compliance order issued prior to the commencement of any enforcement proceeding. Rhea Lana contends that Sackett controls this case. While the Court sympathizes with Rhea Lana's arguments, it is bound to disagree. Because EPA's compliance order in Sackett imposed legal obligations that DOL's letter here does not, and because the Court does not read Sackett to have silently overturned

longstanding D.C. Circuit precedent, the Court concludes that DOL's determination is not reviewable and, accordingly, will grant the Department's motion to dismiss.

## I.     Background

According to its Complaint, Rhea Lana, Inc. is a for-profit business that organizes consignment sales of children's toys and clothing. Compl. ¶ 12. The company leases space and coordinates logistics for the sales, while consignors supply all of the merchandise. Id. ¶¶ 14–16. Consignors bring their items to each event, attach price tags, and place them on display racks. Id. ¶ 17. In most cases, consignors receive 70 percent of the proceeds from sold items. Id. ¶ 25. Rhea Lana offers consignors the choice of retrieving unsold items or donating them to charity. Id. The company relies on consignors to "volunteer" at its events to perform basic functions like greeting attendees, arranging items for sale, and carrying purchases to customers' cars. Id. at 3. While volunteering is not required for an individual to consign at a Rhea Lana event, "consignor/volunteers" receive early access to the sales at which they work and can place their items in favorable locations on the display racks. Id. ¶¶ 18–26. Co-plaintiff Rhea Lana's Franchise Systems offers franchise opportunities "to enterprises that operate in substantial conformity with Rhea Lana's business model" by "operat[ing] semi-annual consignment events" and allowing consignors to volunteer. Id. ¶ 27.[1] Ms. Rhea Lana Riner serves as president of both Rhea Lana, Inc. and Rhea Lana's Franchise Systems. Hr'g Tr. 29:6–7 (July 1, 2014).

DOL's Wage and Hour Division launched an investigation into Rhea Lana's employment practices in January 2013. Compl. ¶ 28. In a May 2013 meeting, DOL advised Rhea Lana that it owed back wages to its consignor/volunteers, who the Department determined should be paid as employees. Id. ¶ 29. DOL also informed Rhea Lana that it owed back wages to 39 additional

---

[1] Except where precise identification of an individual plaintiff is necessary, the Court will refer to both Rhea Lana, Inc. and Rhea Lana's Franchise Systems as "Rhea Lana" or "the company."

employees who were classified as managers.  Id. Ex. 3.  Rhea Lana, which cooperated fully in the investigation, agreed to pay back wages to the 39 employees but disagreed with the Department's conclusion regarding the consignor/volunteers and refused to pay back wages to them.  Id.; id. ¶ 28.  In August 2013, DOL issued two letters regarding the results of the investigation.  Id. Exs. 2–3.  DOL sent the first letter to Rhea Lana employees and individuals who had served as consignor/volunteers.  Id. Ex. 2.  The letter explained that Rhea Lana may not have paid them "as required by the law" from January 2011 to January 2013, and that DOL had contacted Rhea Lana about the issue, but the company had refused to pay the consignor/volunteers.  Id.  It continued that DOL had chosen not to sue Rhea Lana for the back wages, but consignor/volunteers had the right under the FLSA to file their own lawsuits.  Id.  Three weeks later, DOL sent a letter to Ms. Riner memorializing its findings.  Id. Ex. 3.  The letter noted that Rhea Lana had agreed to pay back wages to 39 employees, but had refused to do so for consignor/volunteers.  Id.  It continued:

> [DOL] would like to direct your attention to section 16(e) of the FLSA and Regulations, Part 578.  As you will note, section 16(e) provides for the assessment of a civil money penalty for any repeated or willful violations of section 6 or 7, in an amount not to exceed $1,100 for each such violation.  No penalty is being assessed as a result of this investigation.  If at any time in the future your client is found to have violated the monetary provisions of the FLSA, it will be subject to such penalties.

Id.

Rhea Lana sued DOL, asserting that its decision to classify consignors/volunteers as employees constituted final agency action subject to judicial review under Section 704 of the APA.  Rhea Lana contends that compliance would force "immediate, significant changes to [its] businesses" based on an incorrect interpretation of the FLSA and relevant judicial precedent.  Id. ¶ 45.  The Department filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, arguing that its determination letters do not qualify as final agency action and thus

Rhea Lana lacks both standing and a cause of action under the APA.  The Court held a hearing on July 1, 2014.

## II.      Standard of Review

In considering a motion to dismiss, a court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." Am. Nat'l. Ins. Co. v. Fed Deposit Ins. Co., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted) (internal quotation marks omitted).  In opposing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), plaintiffs bear the burden of establishing that the Court has subject matter jurisdiction over their claims.  See U.S. Ecology, Inc. v. U.S. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103–04 (1998)).  The APA "creates a 'presumption favoring judicial review of administrative action.'"  Sackett, 132 S. Ct. at 1373 (quoting Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984)).  But Section 704 of the APA limits "[t]he district court's authority to review the conduct of an administrative agency . . . to cases challenging 'final agency action.'"  AT&T Co. v. E.E.O.C., 270 F.3d 973, 975 (D.C. Cir. 2001) (citations omitted); see also DRG Funding Corp. v. Sec'y of Hous. & Urban Dev., 76 F.3d 1212, 1214 (D.C. Cir. 1996) ("The requirement of a final agency action has been considered jurisdictional.").  For agency action to be considered final, the action must (1) be the consummation of the agency's decisonmaking process and (2) determine rights or obligations or cause legal consequences to flow.  Bennett v. Spear, 520 U.S. 154, 177–78 (1997) (internal citations omitted).  "If there [is] no final agency action," a plaintiff "lack[s] a cause of action under the APA" sufficient to overcome a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) as well.  Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n, 324 F.3d 726, 731 (D.C. Cir. 2003).

### III.     Analysis

#### A.  Standing

DOL argues that this suit should be dismissed because the plaintiffs do not survive the "threshold jurisdictional question" of whether they have standing. Byrd v. EPA, 174 F.3d 239, 243 (D.C. Cir. 1999). It contends that Rhea Lana has not been injured by the Department's letters—and thus lacks standing—because the letters "do not impose any legal obligations upon Plaintiffs or modify the legal regime to which they are subject." DOL's Mot. to Dismiss at 8. As DOL acknowledges, however, this argument subsumes the standing inquiry into the final agency action inquiry. DOL's Mot. to Dismiss at 8. The D.C. Circuit has rejected this approach to assessing standing in APA cases because "'[i]n analyzing whether [a plaintiff] has standing at the dismissal stage . . . [the court] must assume that [the plaintiff] states a valid legal claim and must accept the factual allegations in the complaint as true.'" Holistic Candlers & Consumers Ass'n v. FDA, 664 F.3d 940, 943 (D.C. Cir. 2012) (quoting Info. Handling Servs., Inc. v. Def. Automated Printing Servs., 338 F.3d 1024, 1029 (D.C. Cir. 2003) (internal citation omitted)) cert. denied sub nom. Holistic Candlers & Consumers Ass'n v. FDA, 133 S. Ct. 497 (2012). The standing analysis is thus separate and distinct from determining whether final agency action exists. In Holistic Candlers, for example, the plaintiffs claimed that warning letters they received from the Food and Drug Administration ("FDA") "effectively outlaw[ed] the manufacture" of their product, ear candles. Id. Despite later concluding that the plaintiffs lacked a cause of action under the APA because the FDA letters did not constitute final agency action, the D.C. Circuit first found that the plaintiffs had standing. Id. at 943. The court explained that "if the [plaintiffs] are right that FDA's actions outlaw the manufacture of ear candles, there is no doubt that the [parties] that manufacture such devices have suffered the requisite 'injury in fact.'" Id. The same is true for Rhea Lana, which argues that the DOL letters have effectively outlawed its business model. If the company is correct about the

impact on its business, as the Court must assume, Rhea Lana has "suffered the requisite 'injury in fact'" and therefore has standing.  Id.; accord Info. Handling Servs., 338 F.3d at 1029.[2]

### B.       Final Agency Action Under the APA

The central issue in this case is whether the DOL letters constitute final agency action under the APA.  The Department concedes that the determination communicated in its letters represented the consummation of the agency's decisionmaking process.  It argues, however, that the letters are not final agency action subject to judicial review because they neither determine rights or obligations nor cause legal consequences to flow.  Bennett, 520 U.S. at 177–78.  The letters impose no legal obligations on Rhea Lana, according to the Government, because they merely "remind[ed the company] of its obligation to comply with the settled law" and did not affirmatively require or compel Rhea Lana to do anything.  DOL's Reply at 1.  And no legal consequences flowed from the letters in the Government's view because, for now at least, DOL has chosen not to bring an enforcement action.  The Government thus contends that the letters leave Rhea Lana "in the same position as every other employer in the United States."  Id. at 9.

Until recently, the Court would have had little trouble siding with the Government based on longstanding D.C. Circuit precedent.  Rhea Lana contends that the DOL letters altered its rights and obligations because they force the company to either suffer the costs of voluntarily complying with an interpretation of the law with which it disagrees, or risk the future enforcement action that DOL pointedly referenced in its letter.  But that alone has not been sufficient in this jurisdiction to fulfill the APA's final action requirement.  The coercive effect of DOL's letter is plain.  Yet, drawing on the Supreme Court's longstanding interpretation of the reviewability of agency action, the D.C.

---

[2]  Because Plaintiffs have demonstrated that Rhea Lana, Inc. has standing, the Court need not consider the standing of Rhea Lana Franchise Systems before proceeding to the final agency action analysis. See  Holistic Candlers, 664 F.3d at 943 n.3 (citing Mountain States Legal Found. v. Glickman, 92 F.3d 1228, 1232 (D.C. Cir. 1996)) (noting that once a court finds standing for one party, it "need not consider the standing of the remaining" parties to consider the claim in question).

Circuit has held repeatedly that an agency determination is not reviewable if it "'only affects [a party's] rights adversely on the contingency of future administrative action.'" <u>DRG Funding Corp.</u>, 76 F.3d at 1214 (quoting <u>Rochester Tel. Corp. v. United States</u>, 307 U.S. 125, 130 (1939)).   As a result, "'[p]ractical consequences, such as the threat of [a party] having to defend itself in an administrative hearing should the agency actually decide to pursue enforcement, are insufficient to bring an agency's conduct under [judicial] purview.'" <u>Nat'l Ass'n of Home Builders v. Norton</u>, 415 F.3d 8, 15 (D.C. Cir. 2005) (quoting <u>Indep. Equip. Dealers Ass'n v. EPA</u>, 372 F.3d 420, 428 (D.C. Cir. 2004)); <u>see also</u> <u>Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.</u>, 452 F.3d 798, 811 (D.C. Cir. 2006) (concluding that legal consequences would not flow if automakers voluntarily complied with an agency letter to avoid potential enforcement proceedings).   The D.C. Circuit has applied these principles in holding unreviewable a variety of agency notifications similar to DOL's letter to Rhea Lana.   <u>See, e.g.</u>, <u>AT&T</u>, 270 F.3d at 976 (holding that Equal Employment Opportunity Commission "Letters of Determination . . . clearly fall short of final agency action"); <u>Indep. Equip. Dealers</u>, 372 F.3d at 427 (holding that an EPA advice letter was not final agency action); <u>Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n</u>, 324 F.3d 726, 731 (D.C. Cir. 2003) (finding that a Consumer Product Safety Commission "investigation of appellant's sprinkler heads, a statement of the agency's intention to make a preliminary determination that the sprinkler heads present a substantial product hazard, and a request for voluntary corrective action . . . do not constitute final agency action").

But then came <u>Sackett v. Environmental Protection Agency</u>, 132 S. Ct. 1367 (2012), which Rhea Lana contends effectively overturned the D.C. Circuit precedent outlined above.   The agency determination challenged in <u>Sackett</u> was an EPA "compliance order" issued to landowners (the Sacketts) under the Clean Water Act.   <u>Id.</u> at 1370.   The order "asserted that the Sacketts' property [wa]s subject to the Act, and that they had violated its provisions by placing fill material on the

property[.]" Id. at 1369.  The order also directed the Sacketts to "immediately undertake activities to restore the Site" in accordance with an EPA work plan and to "provide and/or obtain access to the Site . . . and access to all records and documentation related to the Site . . . to EPA employees[.]" Id. at 1371.  Noncompliance with the order would have resulted in double the daily $37,500 fine for the underlying violations of the Clean Water Act.  Id. at 1370.

The Supreme Court found the EPA compliance order to have "all the hallmarks of APA finality" under both prongs of Bennett test.  Id. at 1371.  The order "determined rights or obligations" because it required the Sacketts to restore and provide the EPA access to the property. Id.  And "legal consequences . . . flow[ed]" from the order because it "expose[d] the Sacketts to double penalties in a future enforcement proceeding."  Id. at 1372.  The Court also observed that although "judicial review ordinarily comes by way of a civil action brought by the EPA . . . the Sacketts cannot initiate that process, and each day they wait for the agency to drop the hammer, they accrue, by the Government's telling, an additional $75,000 in penalties."  Id.

Rhea Lana contends that Sackett paves the way for judicial review of the DOL letters in this case because the company faces the same Hobbesian choice that confronted the Sacketts: either comply with an agency determination it considers to be wrong and harmful or wait for DOL to "drop the hammer" with an enforcement action.  But Sackett is different from this case in two important respects.  First, unlike the EPA's compliance order in Sackett, which ordered the landowners to restore their property, the DOL letters here do not affirmatively compel Rhea Lana to do anything.[3]  Second, the order in Sackett carried its own legal consequence by subjecting the

---

[3]  That DOL's letter to Rhea Lana does not explicitly order the company to comply with the law also distinguishes it from Bimini Superfast Operations v. Winkowski, 994 F. Supp. 2d 106 (D.D.C. 2014), despite Rhea Lana's argument to the contrary.  In Bimini, a cruise operator sought to operate a "cruise to nowhere" between Miami and the Bahamas with crewmembers who were not authorized to work in the United States.  Id. at 110–11.  U.S. Customs and Border Protection issued a letter to the operator explaining that the arrangement violated immigration law because the ship

landowners to double penalties in any enforcement action.  While DOL's letter also exposes Rhea

Lana to penalties by not so subtly implying that failing to comply voluntarily will lead to an

enforcement action, the exposure is entirely contingent on the agency actually bringing and proving

its case in such a proceeding.  Despite its reference to potential penalties for repeated or willful

violations of the FLSA, the letter *itself* has no independent legal effect.[4]  In light of these

differences, the Court does not read Sackett as having unanimously overturned—silently, no less—

the long line of D.C. Circuit cases discussed previously.  See Shalala v. Illinois Council on Long

Term Care, Inc., 529 U.S. 1, 18 (2000) (the Supreme Court "does not normally overturn, or so

dramatically limit, earlier authority *sub silentio*").  The Court therefore concludes that Sackett's

holding is not dispositive in this case and, accordingly, D.C. Circuit precedent forecloses APA

review of the DOL letters at issue here.

    That is not the end of the story, however.  Sackett's holding was animated, to some extent at

least, by the Court's discomfort with the situation facing both the Sacketts and Rhea Lana: an

agency compelling "voluntary" compliance from regulated entities without exposing its regulatory

---

never physically docked in a foreign port.  Id. at 111–13.  The court ruled that the letter "determined rights and obligations" of the operator, and thus constituted final agency action, because it "ordered" that the cruises "must cease" and provided a specific grace period for compliance that "strongly impl[ied] that the agency would bring an enforcement action."  Id. at 114 (internal citations and quotation marks omitted).  DOL's letter to Rhea Lana, by contrast, does not explicitly mandate compliance or set a grace period for voluntary compliance.  Compl. Ex. 3.

[4]  Rhea Lana argues that the letters do in fact carry independent legal consequences because they prove that the company committed a willful violation of the FLSA, which subjects it to penalties in any future enforcement action.  The Supreme Court held in McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988), that FLSA violations are willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA."  While the D.C. Circuit appears not to have confronted this precise issue, other circuits have held that, under the Richland Shoe standard, disagreeing with the Wage and Hour Division's interpretation of the FLSA in good faith does not automatically subject an employer to willfulness penalties in a future civil enforcement action.  See Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 680 (1st Cir. 1998); Reich v. Bay, Inc., 23 F.3d 110, 117 (5th Cir. 1994).  Thus, while DOL determination letters might be used as evidence of willfulness, they do not establish it by operation of law.

interpretations to judicial review.  The Government argued in <u>Sackett</u>, as it does here, that the EPA order was not subject to judicial review because the agency had chosen to seek voluntary compliance through an administrative notification rather than bring an enforcement action.  The Supreme Court rejected that position as overly narrow and contrary to the APA's "presumption favoring judicial review of administrative action."  <u>Sackett</u>, 132 S. Ct at 1373–74.  The Court stressed that administrative notifications are frequently more than simply friendly reminders; rather, agencies often issue them instead of initiating formal proceedings in order to achieve their enforcement goals more quickly and less expensively than through litigation.  But while doing so may be more efficient, the Court made clear in <u>Sackett</u> that seeking "voluntary" compliance does not automatically insulate agency determinations from judicial review under the APA.  The Court shares the Supreme Court's concern and sympathizes with Rhea Lana's predicament.  Ultimately, however, extending <u>Sackett</u> to the DOL letters is simply a bridge too far for this Court.  If indeed <u>Sackett</u> is best read as having implicitly overturned the principle that agency determinations are not reviewable if their legal effect is contingent upon future administrative action, it is for the D.C. Circuit to say so in the first instance.[5]  The Court therefore must grant the Department's motion to dismiss.

---

[5]  The Court notes that the D.C. Circuit would not be the first circuit to hold that a DOL determination letter like the one here constituted final agency action under the APA.  See <u>W. Ill. Home Health Care, Inc. v. Herman</u>, 150 F.3d 659, 663 (7th Cir. 1998).  ("Legal consequences flow from [the DOL letter], both with respect to the [the recipients'] obligations to their employees and with respect to their vulnerability to penalties should they disregard DOL's determination.").

## IV.     Conclusion

For the foregoing reasons, the Court will grant the Department of Labor's motion to dismiss.

The Court will issue an Order consistent with this memorandum opinion.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   November 21, 2014