## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| RHEA LANA, INC. and | ) | |
| RHEA LANA'S FRANCHISE SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:14-CV-00017 (CRC) |
| | ) | |
| DEPARTMENT OF LABOR, | ) | ORAL ARGUMENT REQUESTED |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' MOTION TO STRIKE THE DECLARATION OF ROBERT DARLING

Plaintiffs Rhea Lana, Inc. and Rhea Lana's Franchise Systems, Inc. (collectively, "Plaintiffs" or "Rhea Lana") hereby submit this Motion to Strike the Declaration of Robert Darling submitted by Defendant Department of Labor ("DOL") on September 26, 2016, accompanying the DOL's submission of the Administrative Record ("AR"), in its entirety as it is contradicted by and inconsistent with the Administrative Record proffered by Defendant in this case. In the alternative, should the Court choose not to strike the Darling Declaration in its entirety, Plaintiffs request that the Court strike the specific portions of paragraphs 4, 5, 6, 7, and 8 referenced below. In support of this Motion, Plaintiffs state as follows:

## FACTS

1. This case arises out of Plaintiffs' Administrative Procedure Act challenge to the DOL's August 26, 2013 Final Determination Letter resulting from its investigation into Rhea Lana, Inc.'s labor practices and erroneously concluding that consignor/volunteers were Rhea Lana, Inc. employees under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

2. On January 6, 2014, Plaintiffs filed suit in this Court. Compl., ECF No. 1.

1

3.      On September 26, 2016, Defendant filed a Certified List of Contents of Administrative Record, ECF No. 37, accompanied by the Declaration of Robert A. Darling.  ECF No. 37-2.

4.      The Darling Declaration, executed on September 26, 2016, accordingly post-dates the DOL's final agency action, taken August 26, 2013, by more than three years.  *See* Compl. ¶¶ 32–34, 43–44.

5.      On December 6, 2016, this Court entered an order, granting in part and denying in part Plaintiffs' Motion for Leave to Supplement the Record.  In that Order, the Court stated that:

> The Darling Declaration sets forth the reasons for DOL's finding of wage-and-hour violations, which were absent from the determination letter the agency sent Rhea Lana at the conclusion of its 2013 investigation.  As such, the declaration belongs in the administrative record because it "furnishes an explanation of the administrative action that is necessary to facilitate effective judicial review." Olivares v. Transportation Sec. Administration, 819 F.3d 454, 463-64 (D.C. Cir. 2016) (internal quotes and citations omitted).

Order, ECF No. 45.

6.      The Darling Declaration states that:

> We determined that the workers were employees because Rhea Lana offered and incentivized them to work in exchange for the opportunity to shop early at the sales. The opportunity to shop early was valuable because the workers were able to shop at the sales before the general public and therefore buy items that may not have been available when the sales were open to the general public.  The workers did not work for a charitable purpose.

Darling Decl. ¶ 5.

7.      The Darling Declaration states that:

> The materials in the administrative record supported this conclusion.  Particularly relevant materials upon which we relied in concluding that the workers were employees included:
>
>     a.      Rhea Lana's solicitations to the workers to sign up for shifts in exchange for the opportunity to shop early (A.R. 263, 275);

b.     The "official Bartering Agreement" which Rhea Lana required the workers to accept (A.R. 278);

c.     Rhea Lana's offer to pay people $8 per hour to work shifts at the sales when it could not induce enough individuals to work in exchange for the opportunity to shop early (A.R. 279); and

d.     Rhea Lana's admission that the workers treated as volunteers were the "lifeblood" of their sales events (A.R. 264).

Darling Decl. ¶ 6.

8.     The Darling Declaration states that:

Rhea Lana's "official Bartering Agreement" (A.R. 278) with the workers stated: "By 'volunteering' time with Rhea Lana's you are actually 'bartering' your labor. This means you are trading your work hours for the valuable opportunity to shop early." In the Agreement, the worker acknowledged that "I am voluntarily trading the time I work for Rhea Lana's for the opportunity to shop for children's items and accessories earlier than the general public. This work time is determined from my signing upon the volunteer schedule…and by signing in and out at the event location." The worker further acknowledged that "my labor is worth the federally mandated minimum wage ($7.25/hr) multiplied times the number of hours I work" and "the opportunity to shop early is worth more to me than the value of my labor as calculated above. So, I am bartering my labor for this valuable opportunity."

Darling Decl. ¶ 7.

9.     The Darling Declaration states that:

As is relevant to this case, the investigation found a violation involving a group of workers whom Rhea Lana treated as volunteers and to whom Rhea Lana did not pay any wages. At least some of these workers consigned goods for sale at the sales operated by Rhea Lana.

Darling Decl. ¶ 4.

10.     The Darling Declaration states that:

The description of the work showed that the tasks performed by the workers supported Rhea Lana's sales generally; much of the work would not have helped to sell any items that the workers had consigned at the sales (to the extent that they had consigned items to sell) (including A.R. 83, 102).

Darling Decl. ¶ 8.

3

## STANDARD

The Court should strike an affidavit or declaration offered in support of a motion for summary judgment where it is not based on personal knowledge, sets out facts that are not admissible in evidence, or where the declarant is not competent to testify on the matters set forth in the declaration. Fed. R. Civ. P. 56(c)(4); *Canady v. Erbe Elektromedizin GmbH*, 384 F. Supp. 2d 176, 180 (D.D.C. 2005). The decision to grant a motion to strike is vested in the trial judge's sound discretion. *Collazos-Cruz v. United States*, No. 96-5452, 1997 WL 377037, at \*2 (6th Cir. July 3, 1997) (citing *Whitted v. Gen. Motors Corp.*, 58 F.3d 1200, 1203 (7th Cir. 1995)). A court should strike all improper portions of an affidavit used to support or oppose a motion for summary judgment. Fed. R. Civ. P. 56(c), (e); *see also Wash. Bancorporation v. Said*, 812 F. Supp. 1256, 1277–78 (D.D.C. 1993) (granting defendant's motion to strike a party's statement of genuine issues of fact where it was supposed to include references to the record, but instead consisted only of "statements regarding issues of law, or [sought] support from allegations[,] . . . unsubstantiated documents, or, in several cases, nothing at all").

In an APA case, the court may not consider as evidence any "new rationalizations" for agency action. *Ardila Olivares v. Transp. Sec. Admin.*, 819 F.3d 454, 463–64 (D.C. Cir. 2016) (allowing the government to submit an affidavit filed four months after the final agency action, but stating "[t]he critical point is that the [agency] Declaration contains 'no new rationalizations'; it is 'merely explanatory of the original record,' and thus admissible for our consideration"). Any "'*post hoc* rationalizations' for agency action" are "impermissible." *Id.* at 463–64 (citing *Tourus Records, Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 738 (D.C. Cir. 2001); *see also T-Mobile S., LLC v. City of Roswell*, 135 S. Ct. 808, 816 (2015) (reviewing court must ensure that "reasons are not *post hoc* rationalizations") (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

4

## **ARGUMENT**

### **I.      The Court Should Strike the Entire Darling Declaration.**

The entirety of the Darling Declaration should be stricken as improper evidence because the Administrative Record demonstrates the factors considered by the agency (however flawed) and sets forth the agency's rationale for the August 26, 2013 Determination Letter.

When an agency provides a statement of reasons insufficient to permit a court to discern its rationale in its final agency action, or states no reasons at all, the usual remedy is a "remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). However, courts will allow the agency to avoid automatic remand by submitting a declaration to explain its rationale where it is not otherwise discernable. *Tourus Records, Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001).

Supplementation of the record with the Darling Declaration here is thus only possible "'if the agency failed to explain administrative action so as to frustrate judicial review.'" *City of Dania Beach v. Fed. Aviation Admin.,* 628 F.3d 581, 590 (D.C. Cir. 2010*)* (citing *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). As detailed in Plaintiffs' summary judgment briefs, however, the Administrative Record fully explains the rationale underlying the agency's actions in 2013 and allows the court to consider the factors actually relied upon by the agency in 2013. Accordingly, the Darling Declaration is unnecessary to the Court's review and constitutes impermissible evidence in this APA case. The entirety of the Darling Declaration should therefore be stricken.

### **II.     At the Least, the Court Should Strike Certain Attestations in the Darling Declaration.**

In the alternative, if the Court chooses not to strike the entirety of the Darling Declaration, specific portions of the Darling Declaration referenced above (pulled from or constituting the

entirety of paragraphs 4, 5, 6, 7, and 8) should be stricken as not only superfluous to the Administrative Record, but as flatly inconsistent with it.  These referenced portions constitute *post hoc* rationalizations that are not merely "explanatory of the original record," but are actually contradicted by the Administrative Record.  Accordingly, they do not reflect the contemporaneous reasons for the agency decision and are thus "impermissible."  *Olivares*, 819 F.3d at 463–64; *see also Secs. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 93-94 (1943) (agency's action "must be measured by what the [agency] did, not by what it might have done").  As the Court may not properly consider these referenced statements, they should be stricken as inadmissible.  Fed. R. Civ. P. 56(c)(4).

The referenced paragraphs contradict portions of the Administrative Record that were prepared in 2013 (which constitute truly contemporaneous factors considered by the agency). First, the Final Conference Memorandum, A.R. at 231–36, and the June 18, 2013 FLSA Case Narrative, A.R. at 301–12, demonstrate that the DOL applied the Independent Contractor test factors to ultimately determine that consignor/volunteers constituted Rhea Lana employees.  To this effect, Paragraph 5 is inconsistent with the Administrative Record and contradicted by the Administrative Record insofar as it states that the DOL actually "determined that the workers were employees because Rhea Lana offered and incentivized them to work in exchange for the opportunity to shop early at the sales."

Further, the Administrative Record sets forth the facts that DOL found and considered in making its determination in both the Final Conference Memorandum, A.R. at 231–36, and the June 18, 2013 FLSA Case Narrative, A.R. at 301–12.  Neither of these documents reference, and the Administrative Record otherwise fails to mention, the materials that Mr. Darling now asserts in Paragraph 6, three years later, as being "particularly relevant materials upon which [the DOL]

6

relied in concluding that the workers were employees." Darling Decl. ¶ 6. This paragraph and its associated list of four documents should be stricken in order to remove from evidence the unsupported testimony that he relied on "solicitations to the workers . . . the 'official Bartering agreement[,]' . . . Rhea Lana's offer to pay people $8 per hour to work shifts[,] . . . [and] Rhea Lana's admission that the workers treated as volunteers were the 'lifeblood' of their sales events." Darling Decl. ¶ 6. Similarly, Paragraph 7 should be stricken as it pertains exclusively to the "official Bartering Agreement" that was never mentioned in the Administrative Record besides its inclusion as a one-page print out from a Tulsa, Oklahoma franchise that was printed out on August 24, 2011 (before the DOL even started is investigation in late December, 2012). A.R. at 278.

Finally, the attestations in the Darling Declaration stating or otherwise implying that the workers it audited in the case were pure volunteers, *i.e.*, did not have goods for sale at the events, is contradicted by the Administrative Record. *Compare* Darling Decl. ¶ 4 (stating that only "some" of the individuals at issue in this case consigned goods), and ¶ 8 (stating that "much of the work would not have helped to sell any items that the workers had consigned at the sales (to the extent that they had consigned items to sell")), *with* A.R. at 164 ("[p]rior to the Consent Agreement with the State of Arkansas, workers consisted of both consignors and non-consigning individuals"), and A.R. at 239–241 (in accordance with the January 19, 2012 Consent Agreement "the company . . . may use and permit individuals who are or will be 'consignors' to work before, during and after a Rhea Lana franchise sale without compensation under the Arkansas Minimum Wage Act"). Such attestations contradict the Administrative Record and are thus impermissible evidence or may demonstrate that Mr. Darling is not fully informed or competent to testify on this aspect of the investigation. *See* Fed. R. Civ. P. 56(c)(4). Either way, these attestations should be stricken.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs move this Court to strike the entirety of the Darling Declaration or, in the alternative, the portions of the Darling Declaration specifically referenced herein.

Dated: March 29, 2017                                 Respectfully submitted,

*/s/ Julie A. Smith*
Julie A. Smith
DC Bar No.  435292
Patrick Massari
DC Bar No. 418886
Erica L. Marshall
DC Bar No. 1020506

CAUSE OF ACTION INSTITUTE
1875 Eye Street, N.W., Ste. 800
Washington, D.C. 20006
Telephone: (202) 499-4232
Facsimile: (202) 330-5842
julie.smith@causeofaction.org
patrick.massari@causeofaction.org
erica.marshall@causeofaction.org

*Counsel for Plaintiffs*

8

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1), I hereby certify that on March 29, 2017, I filed this Motion to Strike using the CM/ECF system, which will send electronic notice of this filing to all parties registered to receive such notice.

Dated:  March 29, 2017                                  Respectfully submitted,

                                                                    */s/ Julie A. Smith*
                                                                    Julie A. Smith

## MEET AND CONFER STATEMENT

The undersigned hereby certifies that she contacted counsel for Defendant in a good faith effort to determine whether there is any opposition to the relief sought in this Motion to Strike in accordance with Local Civil Rule 7(m).  Counsel for the Defendant stated that the Defendant opposes the Motion to Strike.

Dated:  March 29, 2017                                  Respectfully submitted,

                                                                    */s/ Erica L. Marshall*
                                                                    Erica L. Marshall

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| RHEA LANA, INC. and | ) | |
| RHEA LANA'S FRANCHISE SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:14-CV-00017 (CRC) |
| | ) | |
| DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**[PROPOSED] ORDER**

Having considered Plaintiffs' Motion to Strike, it is hereby,

ORDERED that the Motion to Strike is GRANTED, and

ORDERED that the entirety of the Darling Declaration shall be stricken from the record.

Dated: _____        _____

                                                The Hon. Christopher R. Cooper
                                                United States District Court Judge